# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　　　v.

ISRAEL LEAL-FELIX,
　　　　　*Defendant-Appellant.*

No. 09-50426

D.C. No.
5:09-cr-00067-
VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
June 11, 2010—Pasadena, California

Filed November 1, 2010

Before: Alfred T. Goodwin and Johnnie B. Rawlinson,
Circuit Judges, and Mark W. Bennett, District Judge.*

Opinion by Judge Goodwin;
Dissent by Judge Bennett

---

*The Honorable Mark W. Bennett, District Judge for the Northern District of Iowa, sitting by designation.

18001

## COUNSEL

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Bryan F. Boutwell, Special Assistant United States Attorney, Riverside, California, for the plaintiff-appellee.

## OPINION

GOODWIN, Senior Circuit Judge:

Israel Leal-Felix, a previously deported Mexican citizen, appeals his sentence after pleading guilty to violating 8 U.S.C. § 1326(a), unlawful reentry into the United States of a removed alien, because of an alleged miscalculation in his criminal history. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Leal-Felix was deported to Mexico in February, 2005, after pleading guilty to the aggravated felony of possessing a firearm by a convicted felon. In March, 2009, Leal-Felix reentered the United States and was found in the Central District of California without having applied for admission to the United States following his removal. Under a plea agreement, Leal-Felix pled guilty to a single-count information for violating 8 U.S.C. § 1326(a), which subjected him to a potential imprisonment term of 20 years. 8 U.S.C. § 1326(b)(2). The plea agreement provided that Leal-Felix would be sentenced at the low end of the Sentencing Guidelines range, determined by a total offense level of 9 and his calculated criminal history.

The Probation Office calculated Leal-Felix's criminal history at 14 points, including in the calculation his pleading guilty to charges for burglary in 2001 and importing controlled substances, methamphetamine, in 2008 for sale and distribution. Among those points were 2 points allotted for each of Leal-Felix's arrests or citations for driving with a suspended license on November 17, 1998, and November 19, 1998. On the condition that he serve 180 days in the county jail for both traffic violations, Leal-Felix was sentenced to concurrent sentences of 36 months of probation for the traffic violations. In accordance with the plea agreement, the district court calculated the imprisonment sentence at the low end of the Sentencing Guidelines range of 21 to 27 months, with an offense level of 9 and Criminal History Category VI, and sentenced Leal-Felix to 21 months of imprisonment.

## DISCUSSION

We review a district court's interpretation of the Sentencing Guidelines de novo. *United States v. Medina-Villa*, 567 F.3d 507, 511 (9th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1545 (2010). The only issue on appeal is whether a cita-

tion for a traffic violation is an arrest countable for criminal history under the Sentencing Guidelines. Leal-Felix argues that, because he was cited but not arrested for the November 17, 1998, traffic violation, the two violations were not separated by an intervening arrest under U.S.S.G. § 4A1.2(a)(2), and the 2 points added for the November 19, 1998, traffic violation should not have been counted. The difference to Leal-Felix would be that the subtraction of the 2 points would put him in Criminal History Category V, where the low-end imprisonment term would be 18 months instead of 21 months under Criminal History Category VI, or 3 months of imprisonment.

**[1]** On similar facts, concerning whether two violations of driving after the defendant's license had been revoked that occurred 15 days apart should have been counted separately under U.S.S.G. § 4A1.2(a)(2), the only circuit court to address this issue is the Seventh Circuit. *United States v. Morgan*, 354 F.3d 621 (7th Cir. 2003) (Easterbrook, J.). The *Morgan* court recognized that "[c]alling the traffic stop an 'arrest' implements the Sentencing Commission's goal" and that "[a] traffic stop is an 'arrest' in federal parlance," as opposed to state law. *Id.* at 623, 624 (citing *Whren v. United States*, 517 U.S. 806 (1996); *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc); *cf. California v. Hodari D.*, 499 U.S. 621 (1991)). The Seventh Circuit also noted that "Morgan was halted and prevented from leaving until the officer released him," although he "could have been taken to the stationhouse, converting a *street arrest* to a *full custodial arrest*." *Id.* at 624 (emphasis added).

**[2]** Since the Seventh Circuit's analysis in *Morgan*, the Sentencing Commission amended § 4A1.2 in 2007. Rather than the "related" or recidivism reasoning of the guideline in *Morgan*, § 4A1.2(a)(2) provides that "[p]rior sentences *always are counted separately* if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to commit-

ting the second offense)." U.S.S.G. § 4A1.2(a)(2) (emphasis added); *see United States v. Rooks*, 596 F.3d 204, 212-13 (4th Cir. 2010). Excepting the relatedness/recidivism reasoning of *Morgan*, the "arrest" analysis still holds.

**[3]** Implicit in a street arrest is that it can turn quickly into a full custodial arrest, depending on the conduct of the defendant. This was true of both of Leal-Felix's street arrests for traffic violations. Moreover, he was sentenced to a concurrent sentence of 180 days in the county jail for these offenses, or 90 days per traffic violation. Imprisonment for his traffic violations shows that, for Guidelines purposes, they represent more than mere citations that Leal-Felix asserts should be disregarded in calculating his criminal history. Under Criminal History Category, § 4A1.1(b), a sentencing court must "[a]dd **2** points for each prior sentence of imprisonment of at least sixty days." U.S.S.G. § 4A1.1(b). Because there were prison sentences for each of Leal-Felix's prior traffic violations, the court properly calculated 2 points for each guilty-plea conviction under § 4A1.1(b).

## CONCLUSION

The district court correctly calculated Leal-Felix's criminal history. We agree with the Seventh Circuit in *Morgan* that treatment of Leal-Felix's traffic violations as arrests comports with the Sentencing Guidelines.

**AFFIRMED.**

BENNETT, District Judge, dissenting:

**TABLE OF CONTENTS**

I.   *THE DECISION IN* **MORGAN**...........................18009

II.  *THE MAJORITY'S DECISION* ...........................18011

III. *PLAIN AND ORDINARY MEANING* ...............18013

   *A.   Rules Of Interpretation And Construction* .......18013

   *B.   "Arrest" Plainly Does Not Include*
       *"Citation"* ...........................................................18014

   *C.   The Purpose Of U.S.S.G. § 4A1.2(a)(2)*............18019

   *D.   A Split Does Not Create Ambiguity* ..................18020

IV.  *POTENTIAL AMBIGUITY*...................................18021

   *A.   "Arrest" In Other Contexts*................................18021

      *1.   Dictionary definitions* .....................................18022

      *2.   Common law definitions* .................................18023

      *3.   State statutory definitions* ..............................18024

   *B.   Context And Purpose*..........................................18025

   *C.   The Rule Of Lenity*.............................................18025

V.   *CONCLUSION*.......................................................18027

With all due respect, because whether a "citation" is an "arrest" within the meaning of U.S.S.G. § 4A1.2(a)(2) is an issue of second impression across the breadth of the federal courts,

it deserves more serious analysis than the judicial sleight of hand performed by the United States Court of Appeals for the Seventh Circuit in *Morgan* and adopted by this court today. Like the classic street shell game, Thimblerig,[1] which used three thimbles or walnut shells and a pea—the so-called "short con," because it was quick and easy to pull off— *Morgan* palmed the pea, so that plain meaning, a common sense and legally correct view of the word "arrest," and fundamental fairness are no longer under the shells. Surprisingly, *Morgan* managed to pull off this trick with a single paragraph. I respectfully dissent from falling for the con.

More specifically, I do not find the decision of the Seventh Circuit Court of Appeals in *Morgan* to be persuasive on the question of whether a "citation" is an "arrest" within the meaning of U.S.S.G. § 4A1.2(a)(2), on either a "recidivism" rationale or the majority's "what might have happened" rationale. Moreover, the fact that U.S.S.G. § 4A1.1(b) requires a sentencing court to "[a]dd **2** points for each prior sentence of imprisonment of at least sixty days" simply begs—but does nothing to resolve—the question of whether Leal-Felix had an intervening "arrest" within the meaning of § 4A1.2(a)(2), as the answer to that question determines whether or not Leal-Felix had one or two prior sentences to "count" pursuant to § 4A1.1(b). The majority's analysis would make the sentences

---

[1]The online version of the Oxford English Dictionary, dictionary.oed.com, defines "thimblerig" as "[a] swindling game usually played with three thimbles (see THIMBLE 2c) and a pea which was ostensibly placed under one of them; the sharper then challenging the bystanders to guess under which the pea had been placed, and to bet on their choice." Wikipedia, en.wikipedia.org, as one might expect, provides a rather more colorful explanation: "The shell game (also known as Thimblerig, three shells and a pea, the old army game), is portrayed as a gambling game, but in reality, when a wager for money is made, it is a confidence trick used to perpetrate fraud. In confidence trick slang, this famous swindle is referred to as a short-con because it is quick and easy to pull off." Wikipedia then traces the origins of the "shell game" back to Ancient Greece. So old, and yet we still fall for it!

received on prior offenses the determining factor in the calculation of a defendant's criminal history, not whether a defendant had an intervening "arrest," essentially writing § 4A1.2(a)(2) out of the Sentencing Guidelines. In contrast, I find that excluding "citations" from "arrests" in § 4A1.2(a)(2) comports with ordinary meaning, common sense, and the purposes of the Sentencing Guidelines.

## I.   *THE DECISION IN* MORGAN

I agree with the majority that the only other federal court to decide this question, the United States Court of Appeals for the Seventh Circuit, held that the word "arrest" in U.S.S.G. § 4A1.2(a)(2) includes a "citation." *United States v. Morgan*, 354 F.3d 621, 623-624 (7th Cir. 2003) (finding that a traffic stop for continuing to drive with a revoked license, which resulted in the issuance of a citation, but not a trip to jail, was an "arrest"). However, unlike the majority, I do not find *Morgan* in the least persuasive.

In concluding that "arrest" within the meaning of § 4A1.2(a)(2) includes "citations," Judge Easterbrook, now Chief Judge, writing for the Seventh Circuit Court of Appeals, began his analysis by concluding, without reasoning or citation to authority, that "[c]alling the traffic stop an 'arrest' implements the Sentencing Commission's goal." *Morgan*, 354 F.3d at 623. The court then stated that a defendant who "commits a crime, is arrested for that offense, and then commits another crime, is a recidivist whose criminal record should be tallied in full." *Morgan*, 354 F.3d at 623 (citing to *United States v. Coleman*, 38 F.3d 856, 860 (7th Cir. 1994). The court determined that the same is true of one who only receives a "citation."

Next, the court in *Morgan* stated that "[a]t all events, there is no ambiguity. A traffic stop is an 'arrest' in federal parlance." *Id.* at 624. (citing *Whren v. United States*, 517 U.S. 806 (1996)). This conclusory statement is troubling, because

I do not believe that *Whren* stands for that proposition at all. I understand *Whren* to stand for the unremarkable proposition that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' " within the meaning of the Fourth Amendment. *Id.* at 809 (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). *Whren* does cite to *United States v. Robinson*, 414 U.S. 218 (1973), stating that "we held [in *Robinson*] that a traffic-violation arrest (*of the sort here*) would not be rendered invalid by the fact that it was 'a mere pretext for a narcotics search.' " *Whren*, 517 U.S. at 813 (emphasis added). However, the traffic stop in *Robinson* involved a full custody arrest, not a brief stop, citation, and release. *Robinson*, 414 U.S. at 221. Further, the court in *Morgan* did not fully reconcile its ruling with the earlier pronouncement of the Seventh Circuit Court of Appeals in *United States v. Joseph*, 50 F.3d 401 (7th Cir. 1995), that the court would not "rewrite the guidelines" by interpreting "arrest" to mean "arrest or charge" in the "absence of a compelling reason . . . for believing that the choice of words was a slip of the pen." *Id.* at 403.

The persuasiveness of *Morgan* is further undermined by the fact that the entire analysis of the issue of whether an "arrest" includes a "citation" is limited to a single paragraph of the opinion. Two points, in particular, that the court emphasized are perplexing and troubling. First, the court emphasized that "Morgan was caught red-handed driving after his license's revocation." *Morgan*, 354 F.3d at 623. Second, the court observed that "Morgan could have been taken to the stationhouse." *Id.* at 624. While both points are no doubt true, I do not think that either the weight of the evidence against Morgan nor a hypothetical trip to the stationhouse is remotely relevant to the issue of the meaning of "arrest" as that term is used in this guideline. Indeed, Judge Easterbrook agreed with this latter proposition in his prior decision in *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (*en banc*), in which he pointedly stated, "The reasonableness of a seizure depends on

what the police *do*, not on what they might have done." *Childs*, 277 F.3d at 953 (emphasis in the original). Why should what officers *might have done* have any more significance in the context of the Sentencing Guidelines than it does in the context of the Fourth Amendment?

This case should not turn on either what might have, but did not happen, or on the sentence imposed at a later time, but instead should turn on whether there was as "intervening arrest" within the meaning of § 4A1.2(a)(2) when Leal-Felix received a "citation."

## II.   THE MAJORITY'S DECISION

While I agree with the majority that the 2007 amendment to § 4A1.2(a)(2) did remove considerations of "relatedness," I do not believe that it eliminated the likelihood of recidivism as a consideration in the calculation of a defendant's criminal history, as discussed in more detail below. *See* U.S.S.G. Chapter Four, Part A, Introductory Commentary (noting that the purpose of the Guidelines sections addressing a defendant's criminal history, generally, is to address the likelihood of recidivism, taking into account the notion that "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation"). However, if the amendment did render the relatedness and recidivism reasoning of *Morgan* irrelevant, then in relying on *Morgan*, the majority must rely on two unsupportable rationales. The first is that "arrest" includes "citations" because it does so in "federal parlance," an assertion that relies on nothing more than a bare assertion in *Whren* that this is so, *see Morgan*, 354 F.3d at 624, which, in turn, relies on *Whren*'s misreading of the circumstances in *Robinson*, as explained above. The second is that the defendant "could have been taken to the stationhouse," *Morgan*, 354 F.3d at 624, but again, for the reasons explained above, why should what officers *might have done* have any significance to the determination of whether a "citation" is an "arrest" within the meaning of the Sentencing Guidelines?

Rather than adding any clarity to the question of whether a "citation" is an "intervening arrest" within the meaning of § 4A1.2(a)(2), the majority—again apparently relying on *Morgan*—introduces two new, undefined concepts into the mix, a "street arrest" and a "mere citation." The majority suggests, as did the court in *Morgan*, 354 F.3d at 624, that a "street arrest," whatever that may be, counts as an "intervening arrest," because it "can turn quickly into a full custodial arrest, depending on the conduct of the defendant." Does "street arrest" extend to any "stop" by the police for any reason, as any "stop" has the potential to turn into a full custodial arrest, depending on the conduct of the defendant? The majority also suggests that the length of Leal-Felix's sentences "shows that, for Guidelines purposes, they represent more than *mere citations* that Leal-Felix asserts should be disregarded in calculating his criminal history." (emphasis added.) Are there then "mere citations" that do not count as "intervening arrests" for criminal history purposes, and "citations" that do count as "intervening arrests" for criminal history purposes, and is the sentence ultimately imposed what determines whether or not a citation is a "citation" or a "mere citation"?

What we do seem to know from the majority opinion is that, if a defendant receives a prison sentence in excess of sixty days for each offense, "the court properly calculate[s] **2** points for each guilty-plea conviction under § 4A1.1(b)." However, whether a defendant had an "intervening arrest" within the meaning of § 4A1.2(a)(2) is supposedly what determines whether a defendant had one or two prior sentences to "count" pursuant to § 4A1.1(b). The majority's analysis would make the sentences received on prior offenses the determining factor in the calculation of a defendant's criminal history, not whether a defendant had an "intervening arrest," essentially writing § 4A1.2(a)(2) out of the Sentencing Guidelines.

The majority's opinion not only fails to answer the question presented, that is, whether a "citation" is an "arrest" within the meaning of § 4A1.2(a)(2), but introduces new unanswered questions about the calculation of a defendant's criminal history, including whether § 4A1.2(a)(2) has any significance at all. David Copperfield's spectacular illusion of making the Statue of Liberty disappear has nothing over the majority's wave of its judicial magic wand, which makes § 4A1.2(a)(2) and its plain meaning vanish.[2]

## III.   PLAIN AND ORDINARY MEANING

### A.   Rules Of Interpretation And Construction

In order to determine whether Leal-Felix's criminal history points were correctly calculated—and more specifically, whether his intervening "citations" were "intervening arrests" within the meaning of U.S.S.G. § 4A1.2(a)(2)—it is necessary, in my view, to determine the meaning of the term "arrest" as it appears in § 4A1.2(a)(2). "When interpreting the Sentencing Guidelines, [a court] applies the general rules of statutory construction." *United States v. Crux-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009).

Very recently, the United States Supreme Court reiterated that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the statutory language is plain, the sole function of the courts —at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Carr v. United States*, 130 S. Ct. 2229, 2242 (2010). Similarly, this

---

[2]Indeed, the majority's reliance on the length of a defendant's sentences as determinative of what counts in his or her criminal history is a rabbit out of the hat, as the prosecution did not argue for such an analysis in the district court, in its brief on appeal, or at oral arguments. More importantly, I am unable to find any authority for this proposition, and the majority cites none.

court has observed, "[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009). This court has expressly applied this rule to the interpretation of Sentencing Guidelines. *See United States v. Treadwell*, 593 F.3d 990, 1006 (9th Cir. 2010) ("If the text of a guideline is unambiguous, its plain meaning controls."); *see also United States v. Crux-Gramajo*, 570 F.3d 1162, 1167 (9th Cir. 2009).

In assessing plain meaning, " 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.' " *United States v. Gonzalez*, 493 F.3d 1031, 1041 (9th Cir. 2007); *see also Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir. 2010) ("The United States Supreme Court has declared that where a statute does not define its terms . . . we are to give such a [term] its ordinary or natural meaning.") (citing *Johnson v. United States*, 130 S. Ct. 1265, 1269 (2010)); *Perrin v. United States*, 444 U.S. 37, 42 (1979). "[T]he structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions." *Bailey*, 599 F.3d at 1167. "An omission at the time of enactment, whether careless or calculated, cannot be judicially supplied, however much later wisdom may recommend the inclusion." *Doyon, Ltd. v. Bristol Bay Native Corp.*, 569 F.2d 491, 498 (9th Cir. 1978).

We apply these well-settled first principles of statutory construction to the term "arrest" within the meaning of U.S.S.G. § 4A1.2(a)(2) below.

## B. "Arrest" Plainly Does Not Include "Citation"

An inquiry into the ordinary, contemporary, common meaning of the word "arrest" should begin and end with recognition of the way that a thousand ordinary citizens (without law degrees) would answer the question of whether they had been "arrested," if they had been stopped, briefly detained,

issued a citation for a traffic or driving offense, and sent on their way. I posit that virtually all would unequivocally answer no. Indeed, I am confident that virtually all would believe that the term "arrest" includes either being told you are under arrest or being physically taken to jail, or both. That is the "plain meaning" of the term "arrest" in the United States.

More than two decades ago, the Supreme Court described the ordinary expectations of a motorist who receives a "citation," as follows:

> [D]etention of a motorist pursuant to a traffic stop is presumptively temporary and brief. The vast majority of roadside detentions last only a few minutes. A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way.

*Berkemer v. McCarty*, 468 U.S. 420, 437 (1984) (footnote omitted). The Supreme Court then observed,

> State laws governing when a motorist detained pursuant to a traffic stop may or must be issued a citation instead of taken into custody vary significantly, *but no State requires that a detained motorist be arrested unless he is accused of a specified serious crime, refuses to promise to appear in court, or demands to be taken before a magistrate.*

*Berkemer*, 468 U.S. at 437 n.26 (emphasis added). The Supreme Court in *Berkemer* recognized, as any ordinary citizen would, that being arrested required something more than simply receiving a "citation." Even if the use of a "citation"

in lieu of "arrest" has been expanded to encompass more serious offenses since *Berkemer*, release on a promise to appear still reinforces the citation recipient's reasonable belief that he or she has not been "arrested."

In *Knowles v. Iowa,* 525 U.S. 113 (1998), the Court pointed out, in the first sentence of the opinion, that "[a]n Iowa police officer stopped petitioner Knowles for speeding, but *issued him a citation rather than arresting him." Knowles,* 525 U.S. at 114 (1998) (emphasis added). The Court then observed that a routine traffic stop, for which a citation was issued, was deemed to be "a relatively brief encounter" and "more analogous to a so-called 'Terry stop' . . . than to a formal arrest." *Knowles*, 525 U.S. at 117 (citing *Berkemer*, 468 U.S. at 439). Again, the Supreme Court perceived immediately the difference betIen being "arrested" and receiving a "citation." It would be odd for a unanimous Supreme Court to distinguish so readily between "arrest" and "citation" for Fourth Amendment purposes, but not to do so for purposes of the Sentencing Guidelines.

This court has also recognized the difference between an "arrest" and a "citation" in the perceptions of persons stopped for a traffic or driving offense. In *Karam v. City of Burbank*, 352 F.3d 1188 (9th Cir. 2003), this court held that an individual who was charged with a misdemeanor and, in lieu of jail, was allowed to sign an agreement to appear in court and ordered not to leave the State of California without first obtaining court permission, was not "seized" for Fourth Amendment purposes. This court reasoned, "[T]hese requirements are no more burdensome than the promise to appear [that] a motorist makes when issued a traffic citation." *Id.* at 1298. Also, somewhat recently, this court held that "detention [does] not become an arrest until [a] defendant [is] moved to a locked detention cell." *United States v. Bravo*, 295 F.3d 1009 (9th Cir. 2002) (being handcuffed and walked 30 to 40 yards to a security office did not turn a detention into an "ar-

rest," when the individual was told the handcuffs would be removed when he reached the security office).

The Sentencing Commission would have been aware of the use of "citations" in lieu of "arrest" when § 4A1.2(a)(2) was drafted. As early as 1968, the American Bar Association (ABA) suggested standards for the pretrial use of the citation procedure, stating, "It should be the policy of every law enforcement agency to issue citations in lieu of arrest or continued custody to the maximum extent consistent with the effective enforcement of the law." ABA, *Project on Standards for Criminal Justice*, *Standards Relating to Pretrial Release*, 31-38 (1968). In 1984, Debra Whitcomb published her study for the National Institute of Justice, finding that the field citation was the "speediest arrest alternative" for street police officers. Debra Whitcomb, Bonnie Lewin & Margaret J. Levine, *Citation Release*, 2 (National Institute of Justice 1984). If the Sentencing Commission had meant to treat "intervening citations" the same way that it treated "intervening arrests," for purposes of counting multiple sentences, it could simply have said "intervening arrests or citations." "Our task [here] is to apply the text, not to improve upon it." *Harbison v. Bell*, 129 S. Ct. 1481 (2009). "A decision to use one word over another . . . is material . . . and is a decision that is imbued with legal significance and should not be presumed to be random or devoid of meaning." *United States v. Gonzales*, 506 F.3d 940, 949 (9th Cir. 2007). Reading "arrest" as *not* including "citations" gives effect to the language actually used by the Sentencing Commission.

Again, the United States Supreme Court has reiterated that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the statutory language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd —is to enforce it according to its terms." *Carr*, 130 S. Ct. at 2242; *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 537 (1994) ("When the text of the statute is clear, our interpretive

inquiry ends."); *Treadwell*, 593 F.3d at 1006 ("If the text of a guideline is unambiguous, its plain meaning controls."); *United States v. King*, 244 F.3d 736, 740 (9th Cir. 2001) (unless the plain meaning leads to an absurd or unreasonable result, our "judicial inquiry is at an end"). I cannot find any way in which interpreting the word "arrest" to exclude "citations" renders the applicable guideline section absurd or unreasonable. "It is our task . . . not to enter the minds of the [Sentencing Commission] — who need have nothing in mind in order for their votes to be both lawful and effective — but rather to give fair and reasonable meaning to the text of the [Sentencing Guidelines]. . . ." *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 30 (1989) (Judge Scalia, concurring). In Justice Jackson's words, a court should engage in "analysis of the [Guidelines]" and not be tempted to engage in "psychoanalysis of Congress [or the Sentencing Commission]." *United States v. Public Utilities Commission of Cal.* 345 U.S. 295, 319 (1953) (Jackson, concurring). Because it is not a court's task to psychoanalyze the Sentencing Commission, and I find that the plain meaning that I would attribute to the guideline in question does not lead to an absurd result,[3] I conclude that "arrest" within the meaning of U.S.S.G. § 4A1.2(a)(2) unambiguously does not include "citation." Morever, I find that this reading of "arrest" comports with the purpose of § 4A1.2(a)(2), as explained below.

---

[3]Applicants for employment, credit, renting residential real estate, and professional licenses are often asked about prior "arrests." I do not feel a truthful response would require a listing of citations for faulty mufflers, broken taillights, or the like. The fact that minor traffic violations such as these never "count" toward a defendant's criminal history, *see* U.S.S.G. § 4A1.2(c)(2), while, in some, instances driving with a suspended license can "count," *see* U.S.S.G. § 4A1.2(c)(1), does not change the perception of ordinary citizens that if, during a traffic stop, they have been cited and released, they have not been "arrested."

### C.   The Purpose Of U.S.S.G. § 4A1.2(a)(2)

Interpreting the term "arrest" as not including "citation" provides the most continuity between both the purpose of the specific guideline section at issue here, and the overall purpose and structure of the whole guidelines scheme. *See United States v. Lewis*, 67 F.3d 224, 228-29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."); *see also Bailey*, 599 F.3d at 1167 ("[T]he structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions."). "[T]he purpose of § 4A1.2 is 'to reflect the seriousness of a defendant's criminal history,' while, at the same time, avoiding 'overstat[ing] the seriousness of the defendant's criminal conduct.' " *United States v. Cruz-Gramajo*, 570 F.3d 1162, 1169-70 (9th Cir. 2009). The purpose of the Guidelines sections addressing a defendant's criminal history, generally, is to address the likelihood of recidivism, taking into account the notion that "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." U.S.S.G. Chapter Four, Part A, Introductory Commentary.

Interpreting the term "arrest" to exclude a "citation" comports with the purpose of avoiding "overstat[ement] [of] the seriousness of the defendant's criminal conduct." *Cruz-Gramajo*, 570 F.3d at 1169-70. An individual who is taken into custody pursuant to the traditional meaning of "arrest," who then subsequently commits another offense, could arguably be said to be likely to re-offend in the future regardless of the discomfort of a custodial arrest. The United States Supreme Court has noted, however, that a traffic stop involves a "temporary and relatively nonthreatening detention." *Maryland v. Shatzer*, 130 S. Ct. 1213, 1224 (2010) (holding that a *Miranda* warning is not necessary in such a situation). A pattern of receiving citations for minor offenses, thus, may not indicate that there is an increased probability that an individual will commit serious crimes in the future.

Interpreting the word "arrest" as not including "citation" is also consistent with the over-all scheme of computing criminal history, as demonstrated by Application Note 3 to the Commentary to this section. Note 3 specifically recognizes that "[c]ounting multiple prior sentences as a single sentence may result in a criminal history score that under-represents the seriousness of the defendant's criminal history and the danger that the defendant presents to the public. In such a case, an upward departure may be warranted." If a court determines, that a defendant's criminal history is under-represented, after counting prior sentences as a single sentence rather than separate sentences on the basis that a "citation" was not an "intervening arrest," the court can make an appropriate adjustment.

Further, "[t]he Sentencing Commission has a mandate to establish sentencing practices that impose punishments which are just in relation to the social costs a convict has imposed on society." *See United States v. Zakhor*, 58 F.3d 464, 465-66 (9th Cir. 1995) (U.S.S.G. § 5E1.2(i) reflects society's costs of punishment by requiring the convict to reimburse the federal government for the cost of his own incarceration or supervisory detention.). Given that there is little cost to society associated with a run-of-the-mill traffic stop and issuance of a "citation," it would arguably be unjust to conclude that "citations" for traffic stops are "intervening arrests" which justify the imposition of additional criminal history points. In light of the purpose of § 4A1.2(a)(2), my reading of "arrest" as not including "citation" is not absurd.

### D.   A Split Does Not Create Ambiguity

Finally, the mere fact that I disagree with the court in *Morgan* about the meaning of "arrest" in § 4A1.2(a)(2) does not mean that the term is ambiguous. Language in a statute or a guideline does not automatically become ambiguous every time two courts disagree as to its meaning. For example, the Supreme Court in *Carr* determined the "plain meaning" of

"travels" in the Sex Offender Registration and Notification Act, even though there was a "division" among the Circuit Courts of Appeals as to the meaning of the term. *See Carr*, 130 S. Ct. at 2234 & 2241-42. Thus, a split in the circuits on the plain meaning of "arrest" does not mean that the guideline *cannot* simply be enforced according to its terms. *See id.* at 2242 (where a statute is plain and unambiguous, the court must "enforce it according to its terms").

Therefore, I would hold that the plain and ordinary meaning of "arrest" in U.S.S.G. § 4A1.2(a)(2) is that an "arrest" does *not* include being given a "citation."

## IV.   *POTENTIAL AMBIGUITY*

Although I would interpret the word "arrest" based on its plain and ordinary meaning, as unambiguously not including "citation", I, nevertheless, recognize that "arrest" is a word frequently used by courts, practitioners, and legal scholars in various contexts. Indeed, "arrest" has a "chameleon" quality in legal usage, depending upon its context. *Compare Kucana v. Holder*, 130 S. Ct. 827, 835 (2010) ("The word 'under' is chameleon; it 'has many dictionary definitions and must draw its meaning from its context.' "). Although I now explore how "arrest" has evolved away from its common, plain, ordinary meaning as understood by the average person, even this alternative analysis of the potential ambiguity of the word leads to the conclusion that "arrest" in § 4A1.2(a)(2) does not include a "citation," because the policies and purposes of the Guidelines support a finding that "arrest" does not include "citations."

### A.   *"Arrest" In Other Contexts*

The following non-exhaustive discussion of the word "arrest," as used in a legal sense, illustrates that the word has become a "chameleon," frequently defined by the context in which it is used. For example, much of the search and seizure

jurisprudence is concerned with officer safety and the protection of evidence with "arrest" interpreted accordingly. *See Knowles*, 525 U.S. at 117 (observing, "The threat to officer safety from issuing a traffic citation, however, is a good deal less than in the case of a custodial arrest," and refusing to extend the "search incident to arrest exception" to allow searches "incident to a citation"). In *Miranda* cases, the definition of "arrest" is influenced by whether or not the action of the law enforcement authorities is sufficient to lead to the threat of coerced statements. *See Berkemer v. McCarty*, 468 U.S. at 438 ("Two features of an ordinary traffic stop mitigate the danger that a person questioned will be induced "to speak where he would not otherwise do so freely. . . ."). A few other contexts deserve somewhat more detailed discussion.

## 1. Dictionary definitions

"[D]ictionary definitions are cognizable as tools for determining the ordinary meaning of words used in a statute." *United States v. Maciel-Alcala*, 598 F.3d 1239, 1242 (9th Cir. 2010). Dictionary definitions of "arrest," however, do not lead to one clear meaning of "arrest" for purposes of interpretation of the Sentencing Guideline in question. While many dictionary definitions include the taking of an individual into "custody," *see Black's Law Dictionary*, 116 (8th ed. 2004) ("Arrest" means "a seizure or forcible restraint" or "the taking or keeping of a person in custody by legal authority, especially in response to a criminal charge."); *Webster's New World Law Dictionary* (2010) (an "arrest" is "[t]he intentional deprivation, whether actual or constructive, of a person's freedom by legal authorities using forcible restraint, seizure, or otherwise taking the individual into custody, especially in response to a warrant or a suspicion based on probable cause that the person being arrested has committed a crime."); *The Random House Dictionary of the English Language*, 83 (1979) ("arrest" is defined as "to seize (a person) by legal authority or warrant; take into custody."), others do not. *See* John Bouvier, *A Law Dictionary* (1856) (an "arrest" has been

defined as "the apprehending or detaining of the person, in order to be forthcoming to answer an alleged or suspected crime."); *Dictionary of American History* (2003) ("An arrest occurs when a public officer acting under legal authority detains an individual to answer for a criminal offense."); *Merriam-Webster's Dictionary of Law*, (1999) ("Arrest" is the "restraining and seizure of a person whether or not by physical force by someone acting under authority in connection with a crime in such a manner that it is reasonable under the circumstances for the person to believe that he or she is not free to leave."). These various sources demonstrate that, while most definitions of "arrest" require restraint, seizure, or detention, not all specify that "custody" is required, and most are silent as to how lengthy the period of restraint, seizure, or detention must be in order to constitute an "arrest."

### 2. Common law definitions

There is some support in English common law for the view that "arrest" includes custody. "[A] constable, having reasonable cause to suspect a person has committed a felony may detain such person until he can be brought before a justice of the peace to have his conduct investigated." Horace L. Wilgus, *Arrest Without a Warrant*, 22 Mich. L. Rev. 673, 689 (1924) (quoting *Beckwith v. Philby*, 108 Eng. Repr. 585 (1827)). However, common law commentators have reached "divergent conclusions" with respect to the definition of an "arrest" under English common law. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 328 (2001).

Neither has traditional American common law developed a consistent definition of the term "arrest." The state of Maryland, as one of the original colonies, and the first of the colonies to be a proprietary government (the proprietor and the freemen are allowed to make laws independent of England). *See* Henry William Elson, *History of the United States of America* Chapter IV, 75-83 (The MacMillan Company, New York, 1904), provides a particularly instructive example of

the imprecision of a common law definition of "arrest." *See* Thomas K. Clancy, *What Constitutes An "Arrest" Within The Meaning Of The Fourth Amendment*, 48 Vill. L.Rev. 129, FN 27 (2003). Maryland courts have defined "arrest" in a variety of ways determined by the context in which the term was used. *See Little v. State*, 479 A.2d 903, 915-16 (Md. 1984) (concluding that brief stop at sobriety checkpoint was not "arrest"); *Morton v. State*, 397 A.2d 1385, 1388 (Md. 1979) ("arrest" occurred when there was "manual seizure" of suspect and subsequent restraint on his liberty); *Bouldin v. State*, 350 A.2d 130, 133-34 (Md. 1976) (citing several formulations of common law definition of "arrest"). Maryland common law is but one example of a body of American common law that has not developed one consistent definition for "arrest."

### 3.   *State statutory definitions*

"[H]ow a state characterizes its own offenses and sentences generally is not relevant to a federal sentence calculation." *United States v. Mendoza-Morales*, 347 F.3d 772, 776 (9th Cir. 2003). For example, "[t]his Court has ruled that in deciding whether a prior state conviction should be counted for purposes of a federal criminal history calculation, a district court must examine federal law." *Id.* However, a review of the relevant California statutes in this case further illustrates the potentially ambiguous nature of the term "arrest," as it has evolved in the legal sense.

California Penal Code § 834 provides that "[a]n arrest is taking a person into custody, in a case and in the manner authorized by law." However, the specific section of the California Penal Code pursuant to which Leal-Felix received his citations, § 40303, provides a procedure by which the "arresting officer" in lieu of taking the individual before a magistrate, may give the "arrested person" a 10 days' notice to appear (a "citation"). The interaction of these two sections may be read to create an ambiguity by providing that an "arrested person" may receive a "citation" when an "arrest" does

not occur until a person is taken into custody. Further, the Supreme Court of California has stated that "when the officer determines there is probable cause to believe that an offense has been committed and begins the process of citing the violator to appear in court, an 'arrest' takes place at least in the technical sense." *People v. Superior Court of Los Angeles County*, 496 P.2d 1205, 1213 (Cal. 1972).

## B. Context And Purpose

Even if I were to accept that the "chameleon" quality of the word "arrest" in various legal contexts meant that the word was ambiguous, that conclusion would simply lead us back to a consideration of the canons of construction and the overall purpose of the guideline in question to resolve the matter. *See, e.g., Rouse v. Law Offices of Rory Clark*, 603 F.3d 69, 705 (9th Cir. 2010) (also recognizing that "legislative history" may be helpful to construe an ambiguous statute). For the reasons stated above, in Sections IV.B. and C., consideration of the canons of construction and the overall purpose of U.S.S.G. § 4A1.2(a)(2) leads to the conclusion that "arrest" within the meaning of that guideline does not include "citation."

## C. The Rule Of Lenity

Finally, even if "arrest" within the meaning of U.S.S.G. § 4A1.2(a)(2) could be construed to be ambiguous, the Rule of Lenity provides additional support for holding that "arrest" within the meaning of that guideline does not include "citation." The Rule of Lenity states that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity to the defendant. *See United States v. LeCoe*, 936 F.2d 398, 402 (9th Cir. 1991); *United States v. Crandall*, 98 F.3d 1347, 1350 (9th Cir. 1996) (court chose interpretation that comported with Rule of Lenity where two interpretations were consistent with the purpose of the statute, and both comported with common sense). The Rule of Lenity applies to the Sen-

tencing Guidelines as well as to penal statutes. *United States v. Fuentes-Barahona*, 111 F.3d 651, 653 (9th Cir. 1997). The United States Supreme Court has identified two policies underlying this rule. *United States v. Bass*, 404 U.S. 336, 348 (1971) (quoting *McBoyle v. United States*, 283 U.S. 25, 27 (1931). "First, concerns of fairness suggest that "warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." *Id.* Second, "because of the seriousness of criminal penalties and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity." *Id.* Here, concerns of fairness suggest that the ordinary person is fairly warned of the meaning of the guideline only if the definition of "arrest" is determined to be what the common world would understand it, that is, as not including "citation." *Id.*[4] Second,

---

[4]Recently, in a concurring opinion in the Eleventh Circuit Court of Appeals in *United States of America v. Wright*, 607 F.3d 708 (11th Cir. 2010), Judge Pryor questioned the appropriateness of applying the Rule of Lenity to the Sentencing Guidelines post-*Booker*, and argues that cases applying the Rule of Lenity to the Guidelines pre-*Booker* are not binding. *Id.* at 716. The concurrence doubts that the purpose of the Rule of Lenity, to provide fair warning concerning conduct rendered illegal, may any longer be served under a system of advisory Guidelines. *Id.* Taken to an extreme, however, this reasoning could also call into question the application of the rule of plain meaning to the Guidelines, which, like the Rule of Lenity, is premised not only on loyalty to the choice of words as used by the drafter, but also on clarity of notice of the meaning of a statute. Further, as stated in *Mistretta v. United States*, 488 U.S. 361, 369 (1989), although the Guidelines "do not bind or regulate the primary conduct of the public," they "are intended to have substantive effects on public behavior" and "[t]hey do no more than fetter the discretion of sentencing judges to do what they have done for generations—impose sentences within the broad limits established by Congress." *Id.* The Rule of Lenity pre-dates the Guidelines and was applied to the sentencing decisions of the judiciary at a time when judicial sentencing discretion was much more akin to a post-*Booker* state. *See Bifulco v. United States*, 447 U.S. 381, 387 (1980) (applied Rule of Lenity to "plain meaning" of "imprisonment" in § 406 of the Comprehensive Drug Prevention and Control Act when no statutory mandatory minimum sentence was provided.). The Rule of Len-

because of the seriousness of a criminal history calculation in the determination of a defendant's sentence, where the Sentencing Commission has failed to include "citation" expressly within the definition of "arrest" in U.S.S.G. § 4A1.2(a)(2), it is not for the courts to do so, but to err on the side of lenity. I believe that the Sentencing Guidelines, like criminal statutes, should be "read with the saving grace of common sense." *See Bell v. United States*, 349 U.S. 81, 84 (1955) (an early "lenity" case also observing, "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity."). Although I find no ambiguity, if I had, the Rule of Lenity would require that the meaning of "arrest" be resolved in favor of lenity to defendant Leal-Felix. This is especially so because no matter how extensive the shuffle by the thimble-rigger, or the judicial sleight of hand, the Rule of Lenity resides under each and every walnut shell.

## V. CONCLUSION

I would reverse the decision of the district court and hold that the word "arrest" as used in U.S.S.G. § 4A1.2(a)(2) unambiguously does not include "citation." In the alternative, I would hold that even if the word "arrest" as used in this Guideline is ambiguous, the policies, purposes and overall scheme of the Guidelines require "arrest" to be interpreted as not including "citation." This is especially so in light of the Rule of Lenity.

---

ity is "rooted in 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.' " *United States v. Bass*, 404 U.S. 336, 347-348 (1971). "[T]he rule has been applied not only to resolve issues about the substantive scope of criminal statutes, but to answer questions about the severity of sentencing." *United States v. R.L.C.*, 503 U.S. 291, 305 (1992) (*citing Bifulco v. United States*, 447 U.S. at 387).